# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2015

Lyle W. Cayce
Clerk

————

No. 14-20433

————

POOLRE INSURANCE CORPORATION; CAPSTONE ASSOCIATED SERVICES, LIMITED; CAPSTONE ASSOCIATED SERVICES (WYOMING), L.P.; THE LAW FIRM, L.L.P.; CAPSTONE INSURANCE MANAGEMENT, LIMITED,

      Plaintiffs–Appellants

v.

ORGANIZATIONAL STRATEGIES, INCORPORATED; NICOLETTE HENDRICKS; WILLIAM HENDRICKS,

      Defendants–Appellees

————

Appeal from the United States District Court
for the Southern District of Texas

————

Before SMITH, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This arbitration case arises from disputes over Appellee OSI's captive insurance program, created with Appellant Capstone's assistance. Appellant PoolRe, managed by Capstone, provided insurance services to OSI's newly created captive insurance companies. Capstone and OSI entered into contracts requiring AAA arbitration, whereas PoolRe and the captive insurance companies entered into contracts requiring ICC arbitration. Arbitrator Ramos joined all of the parties for arbitration under AAA rules. Because Ramos acted

No. 14-20433

contrary to the express provisions of the PoolRe arbitration agreements, the district court held that Ramos exceeded his authority and, pursuant to 9 U.S.C. § 10, vacated the award. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants Capstone Associated Services, Capstone Associated Services (Wyoming) L.P., and Capstone Insurance Management, Limited (collectively "Capstone") are related companies that provide turnkey formation and administrative services for captive insurance companies.[1] Appellant PoolRe Insurance Corporation, administered by Capstone,[2] is a third-party insurer that provides insurance-pooling services. The Feldman Law Firm, L.L.P. ("the Firm")[3] provides legal services related to Capstone's captive insurance support program.

Appellee Organizational Strategies, Incorporated (OSI) is a professional-services firm managed by Appellees Nicolette and William Hendricks. Capstone discussed OSI's captive insurance options with the Hendrickses. After an on-site visit, the Firm sent the Hendrickses an Engagement Letter, attached to which were the Firm's Billing Guidelines. The Billing Guidelines contain an arbitration clause requiring, with the exception of certain disputes,[4] arbitration "pursuant to the Commercial Arbitration Rules of the AAA [American Arbitration Association]." The Billing Guidelines also include a delegation clause: "The parties agree that the issue of arbitrability shall likewise be decided by the arbitrator, and not by any other person."

---

[1] A captive insurance company is created for the purpose of insuring its owner.

[2] We refer to Capstone and PoolRe as "the Capstone Parties."

[3] The Firm is not a party to the appeal, but was a party in the district court.

[4] Disputes arising "out of or in conjunction with attorneys' fees and/or costs and/or expenses" are to be submitted to the "Houston Bar Association's Fee Dispute Committee for binding and nonappealable resolution."

2

No. 14-20433

Also attached to the Engagement Letter was the Services Agreement, which was to be executed after the formation of the captive insurance companies.[5] The Services Agreement contains a venue and jurisdiction clause providing that for most[6] disputes "venue and jurisdiction shall be in Delaware". Additionally, the Services Agreement contains an integration clause: "To the extent of any conflict between the terms and provisions of this Agreement and the Engagement Letter, this Agreement exclusively shall control." PoolRe is not a party to any of the Capstone/OSI agreements.

Mrs. Hendricks signed the Engagement Letter and a copy was sent to Capstone. This multiyear agreement contemplated the formation of three captive insurance companies ("the Captives"), which would underwrite alternative-risk programs for OSI. Capstone provided its services under the Engagement Letter from June 2011 to early 2012 without incident.

During this time PoolRe and the Captives issued a series of insurance policies to OSI. PoolRe entered into a separate Reinsurance Agreement with each of the three Captives. The three contracts contain identical arbitration clauses requiring International Chamber of Commerce (ICC) arbitration. The Reinsurance Agreements also state that arbitration "shall take place in the Territory of Anguilla, B.W.I."[7]

Disputes arose between OSI and the Capstone parties and the Firm. After an annual audit, OSI came to believe it was overpaying insurance premiums. As a result, OSI requested that Capstone change certain accounting

---

[5] A signed copy of the Services Agreement is not in the record, but the record includes three signed letters on Capstone letterhead, one for each Captive, memorializing the agreement.

[6] The Services Agreement provides that "disputes arising under Article V of this Agreement, the sole venue and jurisdiction for resolution of such disputes shall be courts located in Harris County, Texas." Article V concerns Capstone's intellectual property rights.

[7] B.W.I. is the abbreviation for British West Indies.

No. 14-20433

information, and Capstone refused. The parties failed to resolve their issues, OSI terminated the Engagement Letter, and PoolRe cancelled its agreements with the Captives. A dispute arose over whether PoolRe properly refunded deposits to OSI. The Firm subsequently withdrew from further work with OSI, pending resolution of the dispute.

## A.    Arbitration Begins

Capstone filed an arbitration demand against OSI in March 2013 for breach-of-contract claims. The demand was forwarded to Dion Ramos of Conflict Resolution Systems, PLLC (CRS) in Houston, Texas. Ramos appointed himself arbitrator.

The Reinsurance Agreements between PoolRe and the Captives require that the arbitrator be "selected by the Anguilla, B.W.I. Director of Insurance." The director of the Anguilla Financial Services Commission, Keith Bell, sent a letter to PoolRe explaining that no such official existed. Bell designated CRS, in Houston, to select "any such independent arbitrators and to administer related arbitration proceedings." Bell did not mention the ICC requirements in the PoolRe arbitration clauses.

On April 15, 2013, OSI first appeared in the Ramos arbitration, objecting to the arbitrator's authority and moving to dismiss based on the Services Agreement's venue clause. OSI also filed counterclaims against Capstone, alleging that Stewart Feldman, the Firm's named partner, owned and controlled Capstone and PoolRe, creating a conflict of interest in the Firm's representation of OSI. On April 22, PoolRe and the Firm intervened in the Ramos arbitration. PoolRe joined "for the limited purpose of having [Ramos] appoint an Anguilla-based arbitrator."

On April 29, Ramos issued a jurisdictional ruling via email to the parties. Ramos, applying AAA rules, found jurisdiction over Capstone's claims pursuant to the Billing Guidelines and over PoolRe's claims pursuant to the

4

Reinsurance Agreements, holding that PoolRe waived its right to arbitration in Anguilla by intervening. OSI objected to the ruling via email, specifically noting that the PoolRe ruling removed the arbitration from ICC's jurisdiction. Ramos then denied OSI's motion to dismiss.

## B.     Parallel Proceedings in Delaware

Shortly after the Ramos arbitration began, OSI and the Captives sued Capstone[8] in the Delaware Court of Chancery, claiming the premiums OSI paid to the Captives were too high and seeking, *inter alia*, a temporary restraining order on the Ramos arbitration. Capstone removed the case to federal court. Capstone then filed a motion to dismiss on the ground that arbitrability of the disputes should be decided by Ramos. OSI argued that the dispute was not covered by a valid arbitration clause.

On February 12, 2014, the Delaware district court ruled on the motions. Reading the language in the Billing Guidelines and the Services Agreement together, the court found that the contract was unambiguous and that all disputes—other than Article V disputes and certain fee disputes[9]—are "to be resolved by arbitration for which 'venue and jurisdiction shall be in Delaware.'" Having found that the agreements required arbitration of the dispute, the district court dismissed for lack of subject matter jurisdiction. OSI then initiated arbitration in Delaware and successfully moved the Delaware district court to compel Capstone to join that arbitration. Capstone appealed the district court's interpretation of the arbitration agreement and its order compelling arbitration in Delaware; the Third Circuit affirmed. *Organizational*

---

[8] PoolRe is not a party to the Delaware litigation.

[9] The Billing Guidelines require fee disputes over the Firm's legal work to be submitted to "the Houston Bar Association's Fee Dispute Committee for binding and nonappealable arbitration."

No. 14-20433

*Strategies, Inc. v. Feldman Law Firm LLP*, No. 14-1704, 2015 WL 1285958, at *2–3 (3d Cir. Mar. 20, 2015).

## C.    The Second Arbitration Demand and the First Award

On June 23, three days before the first merits hearing in the Ramos arbitration, Capstone filed a second arbitration demand alleging OSI breached Article V of the Services Agreement. Ramos deferred consideration of the second demand until after the first hearing. On July 9, Ramos found OSI in material breach of the contracts with Capstone, PoolRe, and the Firm; granted declaratory relief to the Firm that it was not liable for professional negligence or breach of fiduciary duty; found PoolRe was properly joined in the arbitration; and granted to Capstone, the Firm, and PoolRe "attorney's fees, expenses and costs . . . in the amount of $451,244.44, to be divided among themselves as they see fit." Ramos denied all of OSI's counterclaims.

PoolRe filed a second amended petition to confirm the award with the Texas district court.[10] In the petition, PoolRe sought to compel OSI to join the second arbitration ("Phase II arbitration"). OSI filed a brief opposing the motion to confirm and seeking a temporary restraining order to stay the second petition.

On July 29, the Texas district court issued its first memorandum order and opinion addressing these motions. It stayed PoolRe's motion to confirm pending the Delaware district court's decision on the motion to compel because the Delaware action was filed first. Reading the Billing Guidelines arbitration clause together with the Services Agreement integration and venue clauses, the Texas district court concluded that "the parties intended to carve out disputes under Article V from the broad grant of arbitrability in the previous

---

[10] PoolRe inexplicably filed a motion to confirm the arbitration award in the district court before the arbitration hearing began.

6

agreements among the parties." The court thus denied the Capstone Parties' motion to compel and stayed the Phase II arbitration.

Capstone and the Firm joined the motion to confirm on August 26, 2013. OSI later filed a motion to lift the stay on the confirmation proceedings and a motion to vacate the first award. The Texas district court lifted the stay on the confirmation proceedings and OSI filed its response to the motion to confirm. As noted above, the Delaware district court ruled on February 12, dismissing for lack of subject matter jurisdiction.

On March 31, 2014, the Texas district court ruled on the pending motions to confirm and vacate the award and to compel Phase II arbitration. The district court found that Ramos exceeded his authority by exercising jurisdiction over and applying AAA rules to the disputes between PoolRe and the Captives. Because this "tainted the entire process" the court vacated the award and denied the motion to confirm. Lastly, the court denied the motion to compel because the live arbitration demand requested relief on the first, and now vacated, award. Capstone and PoolRe now appeal the court's vacatur of the award and denial of the motion to compel Phase II arbitration.

## II. JURISDICTION AND STANDARD OF REVIEW

This district court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction over the district court's order vacating the arbitration award and denying the motion to compel pursuant to 9 U.S.C. § 16(a)(1)(B) and (E).

Our "review of the district court's confirmation or vacatur of an arbitrator's award is de novo." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013) (citing *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994)). But review of the arbitration award itself "is very deferential." *Id.* (internal quotation marks omitted). The Court must sustain an award "as long as the arbitrator's decision 'draws its essence' from the contract." *Id.* (quoting *Executone*, 26 F.3d at 1320). "However, where

the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end." *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n, Associated Mar. Officers, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989).

We also review de novo a district court's denial of a motion to compel arbitration. *Galey v. World Mktg. Alliance*, 510 F.3d 529, 531 (5th Cir. 2007).

## III. DISCUSSION

### A.    The District Court Correctly Concluded that Ramos Exceeded His Power

Under the Federal Arbitration Act (FAA), a district court may vacate an award in limited circumstances, including "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). "It is well-established that courts may set aside awards when the arbitrator exceeds his contractual mandate by acting contrary to express contractual provisions." *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 946 (5th Cir. 2005) (citing *Delta Queen*, 889 F.2d at 604).

Arbitration "is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (quoting *Volt Info Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989)). Parties are free to "specify *with whom* they choose to arbitrate their disputes." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1774 (2010).

Agreements mandating arbitration of disputes that "relate to" or "are connected with," rather than merely those "arising out of," a contract are "broad arbitration clauses capable of expansive reach." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). Courts resolve "doubts concerning the scope of coverage of an arbitration clause in

favor of arbitration." *Id.* (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).

In this case, Ramos construed the multiple arbitration agreements between Capstone and OSI, and between PoolRe and the Captives, concluding that "PoolRe is properly joined in the existing arbitration involving Capstone and the Firm pursuant to its own arbitration agreements and ancillary to the otherwise pending litigation."

### 1.    *The Arbitrator-Selection Clauses*

The Reinsurance Agreements between PoolRe and the Captives require that arbitration of all disputes under the insurance policies be submitted to ICC arbitration before an arbitrator "selected by the Anguilla, B.W.I. Director of Insurance." Ramos was not appointed by the Director of Insurance. Indeed, no such individual exists. The district court vacated Ramos's award because he was not "the actual decisionmaker that [PoolRe and the Captives] selected as an integral part of their agreement."

"[T]he power and authority of arbitrators in an arbitration proceeding [are] dependent on the provisions under which the arbitrators were appointed." *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002) (quoting *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991)). Section 5 of the FAA "expressly provides that where a method for appointment is set out in the arbitration agreement, the agreed upon method of appointment 'shall be followed.'" *Id.* at 672–73 (quoting 9 U.S.C. § 5). Thus, "arbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated." *Id.* at 673 (quoting *Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223, 226 (4th Cir. 1994)); *see also* 3 Thomas H. Oehmke & Joan M. Brovins, *Commercial Arbitration* § 61:6 (2014) ("The arbitral selection process is a material contract term, including methodology of appointment, source of the list of potential panelists, . . . and

more."). But a "trivial departure" from the selection method may not warrant vacatur. *Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 625–26 (5th Cir. 2006) (citing *Brook*, 294 F.3d at 673).

In *Brook* we addressed the vacatur of an award granted by an arbitrator selected in a manner inconsistent with the arbitration agreement. 294 F.3d at 672–74. An employee and an employer arbitrated a dispute pursuant to an arbitration clause in an employment agreement. *Id.* at 670. The agreement required, in the event the parties could not agree on an arbitrator, that the AAA submit a list of nine potential arbitrators. *Id.* at 670 n.1. The parties were then supposed to alternate removing names from the list until one arbitrator remained. *Id.* Rather than follow this procedure, the AAA submitted two lists naming fifteen arbitrators and instructed the parties to strike the impermissible arbitrators and rank the rest in order of preference. *Id.* at 673.

This Court, citing numerous cases where "courts, relying on [9 U.S.C. § 5]," have "vacated arbitration awards because of irregularities in the process for selecting arbitrators," stated that the "AAA's departure from the contractual selection process fundamentally contradicts its role in voluntary dispute resolution." *Id.* However, we reversed the vacatur order because we found that the plaintiff had waived this issue. *Id.* at 670, 674.[11]

Here, Ramos was appointed in the manner provided in the Billing Guidelines—to which PoolRe was not a party—but was appointed in a manner contrary to that provided in the Reinsurance Agreements between PoolRe and the Captives, which required "select[ion] by the Anguilla, B.W.I. Director of Insurance." Capstone submitted its original arbitration demand to Ramos.

---

[11] The magistrate judge in *Brook* raised the issue for the first time sua sponte at oral argument of the plaintiff's motion to vacate. *Id.* at 672.

No. 14-20433

PoolRe only intervened in that arbitration after Bell notified PoolRe that no Director of Insurance existed.

Ramos had not been "selected according to the contract-specified method," *Bulko*, 450 F.3d at 625, when he decided the dispute between PoolRe and the Captives. *Cf. Stolt–Nielsen*, 130 S. Ct. at 1774 ("We think it is also clear from our precedents and the contractual nature of arbitration that parties may specify *with whom* they chose to arbitrate disputes."); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract *between the parties*; it is a way to resolve those disputes—but only those disputes—that the *parties* have agreed to submit to arbitration." (emphasis added)). Thus, the district court properly vacated the arbitrator's award with regard to the claims against PoolRe.[12]

### 2.    *The Forum Selection Clauses*

Further, Ramos acted contrary to the Reinsurance Agreements' clause requiring that all disputes "be submitted for binding, final, and non-appealable arbitration to the [ICC] under and in accordance with its then prevailing ICC Rules of Arbitration."

We interpret clauses providing for arbitration "in accordance with" a particular set of rules as forum selection clauses. *Galey*, 510 F.3d at 532 (citing, *inter alia, In re Salomon*, 68 F.3d at 558 (construing a clause requiring

---

[12] Obviously, no arbitrator could be appointed in accordance with the Reinsurance Agreements because no Anguilla Director of Insurance exists. The FAA provides a solution to this problem, however. Under § 5 of the FAA, a party may move the district court to appoint an arbitrator if for any "reason there [is] a lapse in the naming of an arbitrator." 9 U.S.C. § 5. A "lapse" under § 5 is "a lapse in time in the naming of an arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process." *BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 491–92 (5th Cir. 2012) (quoting *Weiner v. Gutfreund (In re Salomon Inc. S'holders' Derivative Litig.)*, 68 F.3d 554, 557–60 (2d Cir. 1995) (citations and internal quotation marks omitted) (distinguishing a lapse in selection of an arbitrator from the designated arbitral forum's refusal, under its constitution, to permit "the use of its facilities to arbitrate the dispute in question")).

arbitration "in accordance with the Constitution and rules then obtaining of the [NYSE]" as a forum selection clause and refusing to compel arbitration in a different forum when the NYSE was unavailable)). If the "parties' agreement specifies that the laws and procedures of a particular forum shall govern any arbitration between them, that forum-selection clause is an 'important' part of the arbitration agreement," and, therefore, the court "need not compel arbitration in a substitute forum if the designated forum becomes unavailable." *Ranzy v. Tijerina*, 393 F. App'x 174, 176 (5th Cir. 2010) (per curiam) (citing *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 333–35 (5th Cir. 1987)); *see also Galey*, 510 F.3d at 534 ("Absent the availability of [the chosen] forum, there is no other forum to which the court may send the parties to arbitrate.").

Here, PoolRe is party to arbitration agreements with the Captives requiring arbitration "in accordance with" ICC rules. This constitutes a forum selection clause integral to the agreement. *See, e.g.*, *Galey*, 510 F.3d at 532–34. Ramos, however, applied AAA rules to the dispute. Thus, Ramos acted "contrary to [an] express contractual provision[]," *Delta Queen*, 889 F.2d at 604, and the district court properly vacated the award. *See id.*[13] Because Ramos acted contrary to the express arbitrator- and forum-selection clauses in the arbitration agreements to which PoolRe was a party, we affirm the district court's holding that Ramos exceeded his authority under 9 U.S.C. § 10(a)(4).

---

[13] Appellants contend the "OSI parties submitted the PoolRe dispute to the arbitrator because their relationship with Capstone and the Firm would likely bring PoolRe into the mix." By submitting these claims, Appellants argue OSI empowered the arbitrator to decide those claims, regardless of the arbitration agreements between PoolRe and the Captives. *See, e.g.*, *Executone*, 26 F.3d at 1323 ("If the parties go beyond their promise to arbitrate and actually submit an issue to the arbitrator, we look both to the contract *and* to the scope of the submissions to the arbitrator to determine the arbitrator's authority."). We do not address this argument because Appellants did not raise it before the district court. *See XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008).

No. 14-20433

## B.    The District Court Did Not Err in Vacating the Entire Award

Appellants argue that even if Ramos improperly arbitrated the dispute between PoolRe and the Captives, the district court should have vacated the award in part insofar as it gave recovery to PoolRe. The arbitrator awarded to Capstone, the Firm, and PoolRe "attorney's fees, expenses and costs . . . in the amount of $451,244.44, to be divided among themselves as they see fit." The district court—after concluding that the arbitrator exceeded his authority by conducting the PoolRe/Captives proceedings pursuant to AAA, rather than ICC, rules—concluded that "PoolRe's intervention tainted the entire process." The award included attorney's fees and costs incurred in the Delaware case, to which PoolRe was not a party.

The FAA provides that a district court "*may* make an order vacating [an arbitration] award" if "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4) (emphasis added).

Appellants cite *Smith v. Transport Workers Union of America, AFL-CIO Air Transport Local 556*, 374 F.3d 372, 375 (5th Cir. 2004) (per curiam), where we stated, "If an arbitral panel exceeds its authority, it provides grounds for a court to vacate that aspect of its decision." In *Smith*, an arbitrator issued an award and a month later modified the award. *Id.* at 374. This Court determined that the plain language of the arbitration agreement did not permit such a modification and, therefore, the arbitrator had exceeded his authority in so doing. *Id.* at 374–75. Thus, the Court affirmed the district court's decision to vacate the modified award and confirm the initial award. *Id.*

Appellants argue that, under *Smith*, a court "can carve out only the objectionable part of the award and confirm the rest." However, a district court does not *have* to vacate in part and confirm in part just because it *may* do so. Moreover, unlike in *Smith*, the district court here found that PoolRe's involvement tainted the entire process. Additionally, the lump sum awarded

13

to the parties was not easily divisible like the two separate awards at issue in *Smith*. Nothing in the statute or our cases suggests that a district court errs by failing to vacate in part, particularly where the arbitrator awarded a lump sum "to be divided among the parties as they see fit." Thus, we hold that the district court did not err in vacating the entire award.

**C.     The District Court Properly Denied the Motion to Compel**

Appellants also appeal the district court's denial of their motion to compel Phase II arbitration. The district court noted that "the live [Phase II] arbitration demand seeks to enforce relief from the claims asserted in the first arbitration." The district court denied the motion because the vacatur of the first arbitration award "precludes the relief requested in the second arbitration." Because we affirm the vacatur of the Phase I arbitration award, we also affirm the district court's denial of the motion to compel. *See Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 293 (5th Cir. 2005) ("In order to [compel arbitration] we must decide: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." (internal quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's vacatur of the arbitration award and its denial of the motion to compel arbitration.