# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2020

Lyle W. Cayce
Clerk

No. 18-11276

KEMPER CORPORATE SERVICES, INCORPORATED,

     Plaintiff - Appellee

v.

COMPUTER SCIENCES CORPORATION; DXC TECHNOLOGY COMPANY,

     Defendants - Appellants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COMPUTER SCIENCES CORPORATION,

     Plaintiff - Appellant

v.

KEMPER CORPORATE SERVICES, INCORPORATED;

     Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before SOUTHWICK, WILLETT, and OLDHAM, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

     This is an appeal of the district court's confirmation of an arbitral award over the objection that the arbitrator had exceeded his authority. We agree

with the district court that no such defect in the arbitration exists. AFFIRMED.

FACTUAL AND PROCEDURAL HISTORY

Kemper Corporate Services, Incorporated ("Kemper"), an insurance company, hired Computer Sciences Corporation ("CSC"), a software developer and technology-services company, to update its insurance software. The parties entered into a multi-year software-services contract, known as the "Exceed Agreement." It contained provisions for arbitration. The Exceed Agreement consisted of a Master Software License and Service Agreement ("MSLSA"), Addendum No.1 ("Addendum"), two work orders, and a product order. Before the parties executed the Exceed Agreement, CSC advised Kemper that it planned to update CSC's existing Exceed computer program from COBOL language to a modern Java version.

The parties agreed that "all disputes arising out of or relating to [the Exceed Agreement], or the breach thereof," must be submitted to nonbinding mediation. The MSLSA provided that if a dispute was not resolved by mediation, the parties could submit to binding arbitration for a final determination. Section 9.3(e) of the MSLSA specified:

> With respect to any matter brought before the arbitrator, the arbitrator shall make a decision having regard to the intentions of the parties, the terms of this Agreement, and custom and usage of the insurance and data processing industry. Such decisions shall be in writing and shall state the findings of fact and conclusions of law upon which the decision is based, provided that such decision *may not (i) award consequential, punitive, special, incidental or exemplary damages* or any amounts in excess of the limitations delineated in Section 7 of this agreement . . . .

The limitations referenced in the above quotation from Section 9 of the MSLSA were the following:

No. 18-11276

7.2.2. Even if [Kemper's] exclusive remedies fail of their essential purposes, CSC shall never be liable under this agreement to [Kemper] or others for any economic loss or consequential damages (including lost profits or savings) indirect, incidental, special or punitive damages arising out of this agreement . . . .

. . .

7.2.3. In no event shall [Kemper] be entitled to an award of punitive, exemplary or multiplied damages for any breach of this agreement by CSC.

(original in all capitals and boldface).

Further, in the Addendum executed by the parties and incorporated into the MSLSA, the parties agreed that

if for reasons not caused by [Kemper], CSC fails to make the Java version of the [Exceed] program generally available to its licensees within [the contractually agreed upon time period, Kemper] may declare CSC in breach of the Agreements and will be entitled to all remedies set forth in this Addendum (including, without limitation, all payments made by [Kemper] pursuant to the Agreements but without any limitations based upon when such payments were made) and to *seek all additional proven direct damages* resulting from such breach.

(emphasis added).

In the years following the execution of the Exceed Agreement, there were significant problems with the software CSC was developing. Nonbinding mediation did not resolve the resulting disputes. As a result, Kemper filed a demand for arbitration with the American Arbitration Association ("AAA"). Among the claims in Kemper's demand was that CSC breached its contractual obligation to make the updated version of the Exceed program "generally available to its licensees, including Kemper." Kemper sought damages including: "1) 'all payments made by [Kemper] pursuant to the agreements', and 2) all additional direct damages, 'including internal salaries and other expenses [Kemper] had incurred on the project.'"

3

No. 18-11276

The parties agreed to conduct an arbitration hearing in Dallas, Texas, where the arbitrator would adhere to the AAA's rules for large and complex cases and apply New York substantive law. The arbitration proceeding included extensive fact and expert discovery, pre-hearing briefing, a ten-day hearing, post-hearing briefing, supplemental post-hearing briefing, and closing arguments. In dispute throughout the proceedings was whether certain damages sought by Kemper were recoverable under the Exceed Agreement. After reviewing the parties' post-hearing briefs, the arbitrator requested additional briefing on multiple issues including whether Kemper's requested damages were direct or consequential.

In the arbitrator's Final Award, the arbitrator found that CSC breached the Exceed Agreement. He then concluded that Kemper was entitled to the following damages:

- payments Kemper made to CSC under the Exceed Agreement;
- internal expenses of Kemper that were the natural and probable cause of CSC's breach of the Exceed Agreement;
- costs and expenses incurred by Kemper in relation to the arbitration; and
- pre-judgment interest at a rate of nine percent per annum until the award was paid or confirmed by judgment of a court.

Kemper moved to confirm the Final Award in the United States District Court for the Northern District of Texas. CSC moved in the Southern District of New York to vacate the Final Award, as the Exceed Agreement stated that the arbitration was to occur in New York and that state's law would apply. The two proceedings were consolidated in the district court in Texas. The magistrate judge to whom the case was referred recommended that the award be confirmed. CSC filed objections, but the district court adopted the magistrate judge's report and recommendations as the district court's findings and conclusions. CSC timely appealed.

No. 18-11276

## DISCUSSION

Appellate review of an order confirming or vacating an arbitration award is *de novo*. *PoolRe Ins. Corp. v. Org. Strategies, Inc.*, 783 F.3d 256, 262 (5th Cir. 2015). Our review of the arbitration award itself is said to be "very deferential." *Id.* (quotation marks omitted). Deference ends, though, if "the arbitrator exceeds the express limitations of his contractual mandate." *Id.* (quotation marks omitted). Thus, "[w]hether an arbitrator has exceeded his powers is tied closely to the applicable standard of review." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013). This court "must sustain an arbitration award even if we disagree with the arbitrator's interpretation of the underlying contract as long as the arbitrator's decision draws its essence from the contract." *Id.* (quotation marks omitted). Therefore, "the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

Under the Federal Arbitration Act ("FAA"), a court may vacate an arbitral award only under limited circumstances, including where the arbitrator exceeded his powers. 9 U.S.C. § 10(a)(4). Section 10(a)(4) has been interpreted narrowly and allows vacatur of an award "[o]nly if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract." *Oxford*, 569 U.S. at 569 (quotation marks and alterations omitted). A party seeking vacatur of an arbitral award under Section 10(a)(4) "bears a heavy burden." *Id.*

CSC, the party seeking vacatur, advances two principal contentions on appeal. First, the district court should have decided the vacatur motion without deference to the arbitral award because the arbitrator exceeded his powers. Second, the damages awarded are consequential under New York law.

No. 18-11276

*I.    Scope of arbitrator's authority*

An arbitrator exceeds his authority when he acts "contrary to express contractual provisions." *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 946 (5th Cir. 2005).  Of principal relevance to the issue of the arbitrator's authority is the language of the arbitration agreement.  *See Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003).  If the "agreement gives an arbitrator authority to interpret and apply a contract, the arbitrator's construction of that contract must be enforced so long as it is 'rationally inferable from the letter or purpose of the underlying agreement.'"  *Id.* (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994)).

The Exceed Agreement provided that "all disputes arising out of or relating to this Agreement" must first be submitted to nonbinding mediation. If mediation proved unsuccessful, then the matter could be submitted to binding arbitration.  If arbitration was pursued, the arbitrator was to "make a decision having regard to the intentions of the parties, the terms of th[e] Agreement, and custom and usage of the insurance and data processing industry."  The arbitrator was to "render an award" within 20 days "after the completion of the arbitration."  The Exceed Agreement expressly authorized the arbitrator to award direct damages resulting from a breach, but it prohibited the arbitrator from awarding consequential damages.

We do not accept CSC's argument that the arbitrator lacked the authority to "categorize damages as consequential or direct."  For the arbitrator to resolve the dispute between CSC and Kemper, which could include awarding damages, he had to categorize the potential damages into the permitted and the prohibited categories.  We conclude that the authority to carry out such categorization is conferred by the Exceed Agreement because it is essential to the arbitrator's task.  In the Final Award, the arbitrator directly addressed, then rejected, CSC's argument that the damages sought by Kemper

were unrecoverable consequential damages.  The Exceed Agreement expressly authorized the arbitrator to decide "all disputes arising out of or related to" the Exceed Agreement, "make a decision having regard to the intentions of the parties," and "render an award."

As we resolve "all doubts in favor of arbitration," the arbitrator did not exceed the scope of his contractual authority by classifying and awarding damages to Kemper.  *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002).  As a result, the Final Award is subject to a very deferential review.  *See BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 787 (5th Cir. 2015).

## II.    *Highly deferential review of arbitrator's award*

We have concluded that the arbitrator acted within the scope of his authority.  Consequently, the award will be upheld if the arbitrator "even arguably interpreted the parties' contract."  *Oxford*, 569 U.S. at 569 (punctuation omitted).  We have held that in deciding whether an arbitrator has interpreted the contract, we are to "consult the arbitrator's award itself" because "[t]he award will often suggest on its face that the arbitrator was arguably interpreting the contract." *BNSF*, 777 F.3d at 788.  In consulting the award, we consider the following as relevant evidence: "(1) whether the arbitrator identifies [his] task as interpreting the contract; (2) whether [he] cites and analyzes the text of the contract; and (3) whether [his] conclusions are framed in terms of the contract's meaning." *Id.* at 788.

The Final Award in this case facially supports that the arbitrator was interpreting the Exceed Agreement.  First, the arbitrator identified his task as interpreting the contract in accordance with AAA and New York laws.  Second, the arbitrator consistently referenced the Exceed Agreement and analyzed its provisions throughout his 54-page Final Award.  The arbitrator adhered to the parties' contract when he applied New York law and interpreted the Exceed

Agreement using canons of construction recognized in New York.  Third, in terms of whether the arbitrator's conclusions were "framed in terms of the contract's meaning," the arbitrator directly addressed whether the damages sought by Kemper were recoverable direct damages.  After he "reviewed the evidence and legal authority cited by both Parties in their pre- and post-hearing briefs" the arbitrator concluded "that the internal expenses claimed are properly recoverable as direct damages."

For these reasons, we hold that the arbitrator did arguably construe the parties' contract, and the arbitral award must stand.

The remainder of CSC's argument goes beyond arbitral authority and addresses the merits of the Final Award, including the accuracy of the arbitrator's interpretation of New York law.  CSC urges us to go beyond our mandate.  At this point in our review, though, our "sole question is whether the arbitrator[] even arguably interpreted the Agreement in reaching [the] award; it is not whether [his] interpretations of the Agreement or the governing law were correct."  *BNSF*, 777 F.3d at 789.  We have no authority to review the merits of the Final Award.  *See Oxford*, 569 U.S. at 572.  "It is the arbitrator's construction of the contract which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."  *Id.* at 573 (quotation marks and alteration omitted).

AFFIRMED.