# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-20058

United States Court of Appeals
Fifth Circuit

**FILED**

April 16, 2020

Lyle W. Cayce
Clerk

SUN COAST RESOURCES, INCORPORATED,

> Plaintiff - Appellant

v.

ROY CONRAD,

> Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before WIENER, HIGGINSON, and HO, Circuit Judges.

JAMES C. HO, Circuit Judge:

Roy Conrad is an hourly fuel tech and driver for Sun Coast Resources, which sells and transports diesel, gas, and other oil products. His job requires travel, for which Sun Coast provides reimbursements and per diems. Conrad believes that Sun Coast violated the Fair Labor Standards Act by not including those amounts in his "regular rate" for purposes of calculating overtime. Pursuant to an arbitration agreement, he brought his FLSA overtime claim against Sun Coast in arbitration on behalf of a class of similarly situated employees.

In a clause construction award, the arbitrator determined that "the agreement . . . clearly provides for collective actions." Sun Coast asked the

district court to vacate the award pursuant to § 10(a)(4) of the Federal Arbitration Act. 9 U.S.C. § 10(a)(4). The district court rejected the application, determining that the arbitrator had interpreted the agreement and that he therefore did not exceed his powers. We affirm.

## I.

We review an order confirming an arbitration award de novo, using the same standards employed by the district court. *See, e.g.*, *21st Fin. Servs., L.L.C. v. Manchester Fin. Bank*, 747 F.3d 331, 335 (5th Cir. 2014).

The district court's refusal to vacate the arbitrator's clause construction award under § 10(a)(4) is proper if the award has *some* basis in the arbitration agreement. *See Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). The correctness of the arbitrator's interpretation is irrelevant so long as it was an *interpretation*. *See, e.g.*, *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572 (2013) (Section 10(a)(4) permits vacatur "only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly"); *BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 789 (5th Cir. 2015) ("The sole question is whether the arbitrators even arguably interpreted the [arbitration agreement] . . . . [I]t is not whether their interpretations of the [a]greement or the governing law were correct.").

The award here shows that the arbitrator interpreted the agreement. *See BNSF Ry. Co.*, 777 F.3d at 788 ("In determining whether the arbitrator exceeded her authority, district courts should consult the arbitrator's award itself."). First, the arbitrator pointed to the breadth of claims subject to arbitration—with few exceptions not applicable here, "any claim that could be asserted in court or before an administrative agency" and "any controversy or claim" arising out of the employment relationship fell within the agreement's ambit. The breadth of claims the agreement covered, compared to the

relatively few it exempted, suggested to the arbitrator that "the parties made a conscious choice" not to exclude class arbitration.

Likewise, the arbitrator noted that the agreement authorized arbitration of "all remedies which might be available in court." He also noted that "Sun Coast drafted the agreement" but did not "carve out" class proceedings. Both facts suggested to him that class arbitration was appropriate.

Finally, the arbitrator noted that the parties agreed that the American Arbitration Association (AAA) rules for employment disputes would govern arbitration. And those rules permit class proceedings. *See* SUPPLEMENTARY RULES FOR CLASS ARBITRATIONS § 1(a) (AM. ARBITRATION ASS'N 2003) (providing rules "where a party submits a dispute to arbitration on behalf of or against a class or purported class").

The arbitrator's analysis here mirrors the analysis in *Reed v. Florida Metropolitan University, Inc.*, 681 F.3d 630 (5th Cir. 2012). There, the arbitrator decided an arbitration agreement provided for class proceedings. *Id.* at 638. The *Reed* arbitrator based his decision on two provisions in the arbitration agreement: The provision requiring that "any dispute" go to arbitration governed by the AAA arbitration rules and a provision allowing the arbitrator to award "any remedy available from a court." *Id.* at 641 (alterations omitted) (quoting the arbitration agreement). He also considered the scope of claims available under state law. *See id.* at 641–42.

The *Reed* court ordered vacatur of the award pursuant to § 10(a)(4). *Id.* at 645. But the Supreme Court subsequently determined that was improper, abrogating that part of *Reed*. *See Oxford Health*, 569 U.S. at 568 & n.1. So whatever the merits of the arbitrator's analysis here, it is enough that he "focused on the arbitration clause's text, analyzing (whether correctly or not makes no difference) the scope of both what it barred from court and what it sent to arbitration." *Id.* at 570.

No. 19-20058

## II.

Section 10's deferential review therefore does not justify vacating the award. But Sun Coast argues that deference is inappropriate because whether an arbitration agreement permits class proceedings "is a gateway issue for courts, not arbitrators, to decide, absent clear and unmistakable language to the contrary." *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718–19 (5th Cir. 2019).

By various indications, the arbitration agreement here appears to assign the question of class arbitrability to the arbitrator rather than to the court, overcoming the presumption we articulated in *20/20*. It provides for arbitration of "any controversy or claim arising out of or relating to [the] employment relationship with Sun Coast." That "[c]overs any dispute concerning the arbitrability of any such controversy or claim." And the agreement incorporates the AAA rules for arbitration. Those provisions strongly indicate that the parties bargained for the arbitrator to decide class arbitrability. *See 20/20 Commc'ns*, 930 F.3d at 720 (noting that similar language "could arguably be construed to authorize arbitrators to decide gateway issues of arbitrability such as class arbitration"); *Reed*, 681 F.3d at 635–36 (consenting to the AAA Supplementary Rules "constitutes a clear agreement to allow the arbitrator to decide whether the party's agreement provides for class arbitration").

But we ultimately need not reach the issue, because Sun Coast forfeited it. In fact, Sun Coast forfeited the issue, not once, but twice—first, by not presenting it to the arbitrator at all, and second, by not presenting it in a timely manner to the district court.

First, Sun Coast joined Conrad in submitting the class arbitrability question to the arbitrator—and did not once suggest to the arbitrator that he had no authority to decide class arbitrability issues. *See, e.g., Executone Info.*

No. 19-20058

*Sys., Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir. 1994) ("[W]e look both to the contract *and* to the scope of the submissions to the arbitrator to determine the arbitrator's authority."); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980) (same).

To begin with, Sun Coast affirmatively agreed that the arbitrator should decide whether collective proceedings were appropriate. In its answer to Conrad's arbitration complaint, Sun Coast asked the arbitrator to "sustain [its] objections to [Conrad's] request for a collective action" and to "preclude this arbitration from proceeding as a class (or collective) arbitration." And in doing so, the company did *not* contend that the arbitrator lacked the power to decide the issue.

Moreover, in a subsequent scheduling order, the company again agreed "that the most efficient and expeditious use of time and resources is for the Arbitrator to first decide whether or not this arbitration may proceed as a collective action proceeding."

At no point did Sun Coast ever dispute the arbitrator's authority to decide class arbitrability at any time during the arbitration proceedings. To the contrary, in its arbitration briefing, the company said the "sole issue . . . is . . . whether the parties *agreed to authorize* collective arbitration in the first place." The silence is especially telling since Conrad claimed in his brief that the arbitrator could pass on class arbitrability. To be sure, "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 946 (1995). But Sun Coast needed to do *something* "to disabuse the arbitrator" of any notion that he could decide the collective proceeding issue. *Executone Info. Sys.*, 26 F.3d at 1323. It did not.

5

In response, Sun Coast claims that it sufficiently raised the question of the arbitrator's authority to decide class arbitrability by citing "cases like" *Opalinski v. Robert Half International Inc.* from the Third Circuit. But there are two *Opalinski* decisions from the Third Circuit, and Sun Coast does not say in its brief which one it provided to the arbitrator.

Had the company cited the first decision, *Opalinski v. Robert Half International Inc. (Opalinski I)*, 761 F.3d 326 (3rd Cir. 2014), Sun Coast might have a claim that it argued to the arbitrator that he lacked the authority to decide the class arbitrability issue. *See id.* at 335–36 (holding that class arbitrability is a gateway issue).

But the company cited the second decision. And the second decision does not support Sun Coast's claim. In *Opalinski v. Robert Half International Inc. (Opalinski II)*, 677 F. App'x 738 (3rd Cir. 2017), the Third Circuit simply looked at whether the arbitration agreement did in fact authorize collective proceedings. *See id.* at 741–44. Put simply, *Opalinski II* involved whether the agreement authorizes class arbitration—not the authority of the arbitrator to decide that issue. *Opalinski II* did briefly mention the court's prior holding in *Opalinski I* that "the question of arbitrability of class claims is for the court . . . to decide"—but only to point out that it would *not* "revisit th[e] issue, consistent with [its] well-established Internal Operating Procedures." *Id.* at 741. But the bulk of the opinion in *Opalinski II* instead focuses on interpreting the arbitration agreement. *Id.* at 741–44.

The record shows that Sun Coast provided *Opalinski II* to the arbitrator—the wrong *Opalinski* if the point was to contest the arbitrator's authority to decide class arbitrability. The company cited *Opalinski II*—and "cases like" it—not to show that the arbitrator lacked power to decide the class arbitration issue, but for the proposition that "the absence of any explicit mention of class arbitration in arbitration agreements weighs against a finding

that it was authorized." Far from establishing that Sun Coast contested the arbitrator's jurisdiction, the company's reliance on *Opalinski II* establishes that the *only* issue the company contested before the arbitrator was the proper interpretation of the arbitration agreement.

Second, Sun Coast did not challenge the arbitrator's authority to decide class arbitrability in a timely fashion before the district court.

Throughout the district court proceedings, Sun Coast contended that the arbitrator failed to interpret the agreement—not that the arbitrator had no authority to interpret the agreement as to class arbitrability. For example, Sun Coast stated that "if there's two plausible explanations for the language, . . . the Court can't second-guess [the arbitrator]. But what we're saying . . . is there isn't two plausible explanations" here. Similarly, in its briefing, Sun Coast's thesis was that the arbitrator "ignored the rigorous legal standards to be applied in determining whether an arbitration agreement that is silent on the issue of collective action can be rewritten to require collective action arbitration." In addition, Sun Coast provided the district court with a highlighted copy of *Opalinski II*. The highlighted portions cover the Third Circuit's discussion of whether the arbitration agreement authorizes class arbitration—not the authority of the arbitrator to decide that issue, the issue decided in *Opalinski I*.

Thus, from the time Conrad initiated the arbitration through the initial district court proceedings, Sun Coast's sole argument was that the arbitration agreement's terms did not provide for collective proceedings. Only in its Rule 59 motion did the company challenge, for the first time, the arbitrator's authority to decide class arbitrability. The argument is therefore forfeited yet again. *See, e.g., U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014) ("This court will typically not consider an issue or new

argument raised for the first time in a motion for reconsideration in the district court.").

The best that may be said for Sun Coast is that it badly misreads the record. The district court gave the arbitrator's decision the deference it was due and properly upheld the award.

\* \* \*

Earlier in these proceedings, the panel informed the parties that oral argument would not be necessary in this appeal. That decision spared the parties the expense of having counsel prepare for argument. In response, Sun Coast filed a motion demanding oral argument, which we denied a few days later.

Sun Coast's motion misunderstands the federal appellate process in more ways than one. To begin, the motion claims that "oral argument is the norm rather than the exception." Not true. "More than 80 percent of federal appeals are decided solely on the basis of written briefs. Less than a quarter of all appeals are decided following oral argument."[1]

In addition, Sun Coast suggests that deciding this case without oral argument would be "akin to . . . cafeteria justice." The Federal Rules of Appellate Procedure state otherwise. They authorize "a panel of three judges who have examined the briefs and record" to "unanimously agree[] that oral argument is unnecessary for any of the following reasons"—such as the fact that "the dispositive issue or issues have been authoritatively decided," or that "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." FED. R. APP. P. 34(a)(2)(B)–(C).

---

[1] Admin. Office of the U.S. Courts, A Journalist's Guide to the Federal Courts 37, https://www.uscourts.gov/file/24263/download (last visited Apr. 9, 2020).

No. 19-20058

In this appeal, the panel unanimously agreed that the decisional process would not be meaningfully aided by oral argument. That should surprise no one, considering the one-sided language of the agreement, Sun Coast's failure to preserve its argument before either the arbitrator or the district court, and its confusion on appeal between *Opalinski I* and *Opalinski II*.

Arbitration has sometimes been criticized for favoring "powerful economic interests" over those the interests harm. *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 477 (2015) (Ginsburg, J., dissenting). Arbitration clauses are, to be sure, typically drafted by the economically more powerful party. *See id.* Even so, arbitration can nevertheless benefit both sides by reducing litigation costs, which disproportionately harm the less well-off.

But another tactic powerful economic interests sometimes use against the less resourced is to increase litigation costs in an attempt to bully the opposing party into submission by war of attrition—for example, by filing a meritless appeal of an arbitration award won by the economically weaker party, and then maximizing the expense of litigating that appeal. *See id.* at 476 n.3 (Ginsburg, J., dissenting) ("[L]arge arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights.") (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)).

Dispensing with oral argument where the panel unanimously agrees it is unnecessary, and where the case for affirmance is so clear, is not cafeteria justice—it is simply justice. We affirm.[2]

---

[2] Conrad asks that the court supplement the record or take judicial notice of further proceedings that have occurred in the arbitration. Since we affirm the judgment of the district court in Conrad's favor, we deny his request as moot.