# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2025

Lyle W. Cayce
Clerk

———————

No. 24-10833

———————

UNITED STATES TRINITY ENERGY SERVICES, L.L.C.,

*Plaintiff—Appellant*,

*versus*

SOUTHEAST DIRECTIONAL DRILLING, L.L.C.,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-MC-8

———————————————————————

Before STEWART, CLEMENT, and WILLETT, *Circuit Judges*.

EDITH BROWN CLEMENT, *Circuit Judge*:

United States Trinity Energy Services, L.L.C. ("Trinity Energy") and Southeast Directional Drilling, L.L.C. ("Southeast Drilling") were parties to a subcontract for the construction of natural gas pipelines. After a dispute arose over the liability for the "stand-by costs" incurred during construction, the parties agreed to arbitration. A panel of three arbitrators concluded that Southeast Drilling was entitled to stand-by costs in the amount of $1,662,000 from Trinity Energy. The district court denied Trinity Energy's petition to vacate the arbitration award and granted Southeast Drilling's motion to confirm it. Trinity Energy appealed. We AFFIRM.

No. 24-10833

**I.**

Trinity Energy contracted with Sunoco Pipeline, L.P. ("Sunoco") to serve as the general contractor for the construction of natural gas pipelines from shale fields in western Pennsylvania, among other places, to the Delaware River for transport. In early 2020, Trinity Energy then subcontracted with Southeast Drilling for work on a special portion of the project involving horizontal directional drilling.

The project encountered a series of delays. Sunoco was tasked with obtaining drilling permits for the project but procured them at a slow pace. On two occasions, Southeast Drilling experienced "loss of circulation" or "inadvertent returns" caused by mud perforating the formation. Sunoco accordingly directed Southeast Drilling to stop its work temporarily, resulting in additional delays. Later that spring, the Pennsylvania governor issued an executive order halting non-essential work throughout the state because of COVID-19, and in response, Sunoco directed Trinity Energy to stop drilling on the project yet again.

Trinity Energy and Southeast Drilling agreed in their subcontract that stand-by costs—or expenses incurred when machinery and workers are present at the drilling site but unable to perform drilling operations—would be reimbursed. Section 3.07 of the subcontract provided,

> In the event Contractor or Owner suspends work on the Project for any reason, other than for Subcontractor's default under this Agreement, Subcontractor shall be entitled to and shall be paid for all stand-by costs as a result of such suspension, including all de-mobilization and re-mobilization costs, and the Project Schedule shall be extended.

Because of the various delays, stand-by charges were assessed during each event where Southeast Drilling's equipment and personnel were on-site but unable to drill.

2

No. 24-10833

In March 2021, Sunoco and Southeast Drilling entered into an agreement where Sunoco provided "payment in full settlement of all claims against Company and the Liens" (the "Direct Pay Agreement").[1] Shortly after executing this agreement, Sunoco separately participated in mediation with Trinity Energy where the parties agreed to a global settlement in exchange for the release of Trinity Energy's claims against Sunoco.

Neither agreement settled the dispute over stand-by costs between Trinity Energy and Southeast Drilling. To resolve this issue, the parties turned to the subcontract, which included a provision allowing them either to file suit in court or enter arbitration for "all claims, disputes, and controversies arising out of or relating to" their agreement. In May 2021, Trinity Energy initiated arbitration by seeking a declaration of non-responsibility for the stand-by costs resulting from Sunoco's delays and the COVID-19 pandemic. Southeast Drilling counterclaimed, demanding compensation from Trinity Energy for these costs.

A panel of three arbitrators—after entertaining oral argument, reviewing the parties' written submissions, and considering the relevant provisions of the subcontract—concluded that Southeast Drilling was entitled to $1,662,000 of stand-by costs from Trinity Energy.

On June 6, 2023, Trinity Energy filed a petition to vacate the arbitration award in the United States District Court for the Northern District of Texas. Relying on 9 U.S.C. § 10(a)(4), Trinity Energy sought to vacate the final award because "the arbitration panel exceeded its authority."

---

[1] Aside from arguing the subcontract contains competing provisions limiting its liability for stand-by costs, Trinity Energy also contends Southeast Drilling expressly waived and released any claim for additional payment against Sunoco for the project by executing the Direct Pay Agreement and therefore relinquished its "sole and exclusive remedy" against Trinity Energy in the form of a pass-through claim.

No. 24-10833

On June 29, 2023, Southeast Drilling filed both a response in opposition to Trinity Energy's petition and a cross-motion to confirm the arbitration award. On October 2, 2023, the district court entered an order denying the motion to vacate the award.

Trinity Energy appealed the district court's denial of its petition while Southeast Drilling's cross-motion to confirm the arbitration award remained pending. *U.S. Trinity Energy Servs., L.L.C., v. Se. Directional Drilling*, No. 23-11071, 2024 WL 3738879, at *1 (5th Cir. 2024) (per curiam). A panel of this court dismissed that appeal as interlocutory by concluding it did not have jurisdiction. *Id.* at *2.

The district court subsequently granted Southeast Drilling's cross-motion to confirm the arbitration award on September 4, 2024.

Trinity Energy timely appealed.

## II.

We review de novo a district court's order confirming an arbitration award. *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 362, 364 (5th Cir. 2016).

An arbitrator's decision will be vacated "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). In our circuit, "judicial review of an arbitration award is extraordinarily narrow," *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 543–44 (5th Cir. 2016) (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471–72 (5th Cir. 2012)), and our review is "exceedingly deferential" to the arbitration panel's decision, *Brabham v. A.G. Edwards & Sons*, 376 F.3d 377, 380 (5th Cir. 2004). "[D]oubts or uncertainties must be resolved in favor of upholding" an arbitration award. *Cooper*, 832 F.3d at 544.

### III.

Congress enacted the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA") "to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall Street Assocs., L.L.C. v. Mattel*, 552 U.S. 576, 581 (2008) (alterations in original) (quoting *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 443 (2006)). As such, our court has long held that "[a]rbitration is a matter of contract." *BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 787–88 (5th Cir. 2015) (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)). In this sense, "the power and authority of arbitrators in an arbitration proceeding is dependent on the provisions under which the arbitrators were appointed." *Id.* (quoting *Brook*, 294 F.3d at 672). When parties agree to resolve a dispute through arbitration, a federal court's interpretation of substantive contractual terms is often "beside the point because it is not our interpretation that the parties bargained for." *Id.* at 789.

Trinity Energy appeals on the grounds that "the arbitration panel exceeded its authority and acted in manifest disregard of the law." The contractor specifically contends the arbitration panel "failed to harmonize numerous subcontract provisions limiting Trinity's obligation to pay Southeast's standby costs."

### A.

Only limited circumstances allow for vacatur of an arbitration award. Indeed, Section 10 of the FAA provides the exclusive statutory grounds. *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009).

No. 24-10833

When arbitration goes an opponent's way based on questionable contract interpretation as Trinity Energy alleges, the losing party often seeks redemption in federal court under 9 U.S.C. § 10(a)(4) by showing that the arbitration panel "exceeded their powers." This section provides a more generalized basis for relief following a series of specific grounds involving conduct like "corruption," "fraud," "evident partiality," and "misconduct." 9 U.S.C. § 10(a)(1)–(3). The Supreme Court has cautioned, however, that "a party seeking relief under [§ 10(a)(4)] bears a heavy burden." *Oxford Health*, 569 U.S. at 569.

Under this section, merely "convincing a court of an arbitrator's error—even his grave error—is not enough." *Id.* at 572. Instead, "an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Id.* at 569 (quoting *E. Associated Coal Corp. v. United Mine Workers of Am.,* 531 U.S. 57, 62 (2000)). "[T]he question for a judge is not whether the arbitrator[s] construed the parties' contract correctly, but whether [they] construed it at all." *Id.* at 573. Only when "the arbitrator acts outside the scope of [their] contractually delegated authority—issuing an award that simply reflects [their] own notions of economic justice rather than drawing its essence from the contract," may a court vacate this determination. *Id.* at 569 (cleaned up). In simpler terms, "[t]he potential for . . . mistakes is the price of agreeing to arbitration." *Id.* at 572–73.

The record shows the arbitration panel decided the matter based on the briefing provided by the parties and oral argument. In granting Southeast Drilling's motion to confirm the arbitration award, the district court observed that "not only did the [arbitration] panel refer to the subcontract and direct-pay agreement at issue, but the panel devoted pages of its final award to the recitation of its terms and analysis of its text."

6

Our court does not require more. The final award reveals the arbitration panel reviewed the evidence presented, considered the effects of various provisions in the subcontract, and concluded that Trinity Energy owed Southeast Drilling for stand-by costs. Vacatur is therefore unjustified under § 10(a)(4) because Trinity Energy failed to show the arbitration panel exceeded its powers by disregarding the subcontract entirely. The parties bargained for this dispute resolution arrangement, and we conclude this arbitration panel's "construction holds, however good, bad, or ugly." *BNSF Ry. Co.*, 777 F.3d at 790 (quoting *Oxford Health*, 569 U.S. at 573).

**B.**

Trinity Energy also argues the arbitration panel manifestly disregarded Texas law in interpreting the subcontract. Although the contractor's briefing does not explicitly frame this non-statutory argument as part of its assertion that the panel "exceeded their powers," we understand Trinity Energy to contend that the arbitration panel exceeded their powers by recognizing clearly governing principles of Texas law but ignoring them in favor of its "own brand of industrial justice." *Walker v. Ameriprise Fin. Servs., Inc.*, 787 F. App'x 211, 213 (5th Cir. 2019) (per curiam) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

Although "manifest disregard of the law" is not a freestanding ground for vacatur of an arbitration award in our circuit, *Jones v. Michaels Stores, Inc.*, 991 F.3d 614, 615–16 (5th Cir. 2021) (citing *Citigroup*, 562 F.3d at 355), Trinity Energy alleges that manifest disregard of the law remains viable "as an independent ground for review *or* as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10," citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010). In other words, Trinity Energy essentially ignores its inapplicability as an independent basis while

simultaneously attempting to subterfuge this non-statutory ground for vacatur within § 10(a)(4).

Our court has never held that "manifest disregard of the law" is a basis to establish that arbitrators "exceeded their powers" under § 10(a)(4). The closest we came was assuming without deciding it could in *McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 650 F. App'x 208, 213 (5th Cir. 2016) (per curiam). In that unpublished opinion, the appellant unsuccessfully argued an arbitrator manifestly disregarded the law and therefore exceeded his powers within the meaning of § 10(a)(4). *Id.*

To begin, the judicial glossing Trinity Energy seeks would be inappropriate given the limited but express grounds for vacatur outlined by Congress in § 10(a) of the FAA and our court's unfavorable treatment of "manifest disregard of the law" as a viable basis for relief.[2] As discussed earlier, Trinity Energy cannot show the arbitration panel exceeded its powers because the arbitration award clearly drew its essence from the subcontract. Like alpha and omega, that is the beginning and the end of our inquiry under § 10(a)(4).

Grafting "manifest disregard of the law" as a basis for a losing party at arbitration to prevail under § 10(a)(4) would risk tension with *Hall Street*—and would run headlong into *Oxford Health*—by forcing us to

---

[2] Other circuits have observed the same. *See Beumer Corp. v. ProEnergy Servs., LLC*, 899 F.3d 564, 566 (8th Cir. 2018) (noting "manifest disregard of the law is not a ground on which a court may reject an arbitrator's award under the Federal Arbitration Act" (cleaned up)); *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1324 (11th Cir. 2013) (declaring its "judicially-created bases for vacatur," such as where an arbitrator behaves in manifest disregard of the law, "are no longer valid"); *Ramos–Santiago v. United Parcel Serv.*, 524 F.3d 120, 124 n.3 (1st Cir. 2008) ("We acknowledge the Supreme Court's recent holding in [*Hall Street*] that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the [FAA].").

No. 24-10833

conduct a less deferential review of a panel's award than the FAA contemplates.[3] Indeed, adopting Trinity Energy's reading essentially would rewrite the question a judge must ask from "whether the arbitrators construed the contract at all" to "whether they construed it correctly."

In its proper form, § 10(a)(4) is supposed to provide relief when an arbitrator refuses to even consider a contract's basic commands while protecting the arbitrator's virtue of resolving disputes straightaway—not provide a backdoor for a party to seek judicial review of the arbitrator's interpretations. Trinity Energy petitions essentially for the latter, even though the contractor agreed to arbitrate a dispute like this one and "must now live with that choice." *Oxford Health*, 569 U.S. at 573.

Like our court has held before, "the statutory grounds are the exclusive means for vacatur under the FAA." *Jones*, 991 F.3d at 615 (quoting *Citigroup*, 562 F.3d at 355); *see Dream Med. Grp., L.L.C., Old South Trading Co., L.L.C.*, No. 22-20286, 2023 WL 2366982, at *2 (5th Cir. Mar. 6, 2023) (per curiam) ("These limited circumstances do not include vacating an arbitration award based upon the merits of the claims that were heard by arbitrators."). The text Congress enacted means what it says throughout § 10(a), and judicial reconfiguration of § 10(a)(4) would betray congressional intent. *See Dream Med. Grp.*, 2023 WL 2366982, at *3 (appellant's "§ 10(a)(4) arguments amount to an invitation for us to reassess the merits of the Panel's decision, which does not fall under the limited text of § 10(a)(4)

---

[3] In *Hall Street*, for example, the Supreme Court cautioned that "even if we assumed []§ 10 . . . could be supplemented to some extent, it would stretch basic interpretive principles to expand the stated grounds to the point of evidentiary and legal review generally." 552 U.S. at 586. The Court also observed that "[a]ny other reading opens the door to the full-bore legal and evidentiary appeals that can 'render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id*. at 588 (citation omitted).

or support vacatur"). In short, we cannot substitute a court panel's judgment in place of an arbitration panel's decision by recognizing "manifest disregard of the law" as a basis for vacatur embedded within § 10(a)(4).

## IV.

As for Southeast Drilling's attempt to impose "sanctions against Trinity for defending" what it describes as a "frivolous appeal," we emphasize that precedent binding our court makes it difficult to overturn an arbitration panel's award—not impossible. In any event, Federal Rule of Appellate Procedure 38 confers broad discretion on federal courts of appeals to award sanctions in any appeal the court determines to be "frivolous." *See* FED. R. APP. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.").

As the text of Rule 38 makes clear, the party facing sanctions must first receive proper notice and have an opportunity to respond. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). A mere statement in a party's brief seeking sanctions against an opposing party is insufficient.[4]

Southeast Drilling's prayer for sanctions fails because the subcontractor did not file a motion, and the court did not sua sponte provide

---

[4] This tracks the rule adopted by our sister circuits. *See Abeyta v. City of Albuquerque*, 664 F.3d 792, 797 (10th Cir. 2011) (denying request for sanctions because requesting party did not file separate motion); *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 709 (9th Cir. 2004) (denying request for sanctions made in appellate brief because "Rule 38 does not permit an award of fees unless the request is made in a 'separately filed motion'"); *In re Gulevsky*, 362 F.3d 961, 964 (7th Cir. 2004) (same).

notice.[5] We therefore decline to exercise our discretion where it appears unwarranted.

## V.

For the reasons set forth above, we AFFIRM the district court's judgment.

---

[5] Further, our court has held that "the case for Rule 38 sanctions is strongest in matters involving malice, not incompetence." *Sun Coast Res., Inc. v. Conrad*, 958 F.3d 396, 398 (5th Cir. 2020). No clear showing of either has been made here. Trinity Energy challenged the arbitration award by advancing non-meritorious arguments to resolve a question we had not previously answered.