# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 5, 2021

Lyle W. Cayce
Clerk

No. 19-30702
CONSOLIDATED WITH
No. 19-30989

---

PRISCILLA LEFEBURE,

*Plaintiff—Appellee*,

*versus*

SAMUEL D'AQUILLA, 20TH JUDICIAL DISTRICT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:17-CV-1791

---

ORDER:

Three retired federal judges seek leave to file a brief in this case as amici curiae. The defendant vigorously opposes their motion, citing precedents from two other circuits that categorically exclude amicus briefs such as this.

No. 19-30702
c/w No. 19-30989

The putative amici do not mention, let alone refute, those categorical rulings.  Nor do amici address the defendant's alternative contention that the court should disqualify their brief due to concerns about its origins.

I nevertheless grant the motion.  Our circuit, like the Supreme Court, does not categorically exclude amicus briefs such as this.  And if there is something wrong with this particular amici effort, we can judge the brief on its merits—there is no need to exclude it from these proceedings altogether.

## I.

The defendant asks us to deny leave to amici based on categorical rules adopted by the D.C. and Third Circuits.  I address each precedent in turn.

## A.

In *Boumediene v. Bush*, 476 F.3d 934 (D.C. Cir. 2006) (per curiam), the D.C. Circuit by a 2-1 vote denied leave to a group of retired federal judges who sought to file a brief as amici.  In doing so, the majority invoked a 1982 advisory opinion, issued by the U.S. Judicial Conference Committee on Codes of Conduct, that forbids references to individuals as "former judges" in court proceedings.  The advisory opinion states that "'[j]udges should insure that the title 'judge' is not used in the courtroom or in papers involved in litigation before them to designate a former judge, unless the designation is necessary to describe accurately a person's status at a time pertinent to the lawsuit.'"  *Id.* at 934–35 (quoting Advisory Opinion No. 72, Committee on Codes of Conduct, Judicial Conference of the United States).

In her dissent, however, Judge Rogers responds that the advisory opinion applies only "when a former judge appears as *counsel*," and not as amici.  *Id.* at 935 (emphasis added).  The advisory opinion expressly applies only to "former judges who have returned to the practice of law" and who are "actively practicing in federal courts."  *Id.* at 935 n.1 (quoting Advisory

2

No. 19-30702
c/w No. 19-30989

Opinion No. 72, Committee on Codes of Conduct, Judicial Conference of the United States). Moreover, the advisory opinion is explicitly premised on the concern that "[a] litigant whose lawyer is called 'Mr.,' and whose adversary's *lawyer* is called 'Judge,' may reasonably lose a degree of confidence in the integrity and impartiality of the judiciary." *Id.* (quoting Advisory Opinion No. 72, Committee on Codes of Conduct, Judicial Conference of the United States) (emphasis added).

To be sure, reasonable minds can disagree over whether the logic of the advisory opinion still applies when a retired judge participates as amici, rather than as counsel. A case could be made that it undermines confidence in the judiciary if a litigant is forced to face an adversary supported by *any* person who "is called 'Judge'"—regardless of whether that person serves as opposing counsel or merely as opposing amici. *Id.*

That said, there is an obvious difference in quantity (if not in quality) between a single adverse amicus brief, on the one hand, and having to face off against a former judge, day in and day out, in writing as well as in the courtroom, throughout the entire course of the litigation, on the other hand.

Perhaps that is why, in the wake of *Boumediene*, the Supreme Court not only continues to accept amicus briefs filed by retired federal judges, but even quotes them from time to time in judicial opinions. *See*, *e.g.*, *Terry v. United States*, 141 S. Ct. 1858, 1868 (2021) (Sotomayor, J., concurring in part and concurring in the judgment) (quoting amicus brief of retired federal judges); *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 137 S. Ct. 2042, 2058 (2017) (Ginsburg, J., dissenting) (same); *Aurelius Capital Management, L.P. v. Tribune Media Co.*, 577 U.S. 1230 (2016) (granting leave to former federal judges to file brief as amici); *Hamdan v. Rumsfeld*, 546 U.S. 1166 (2006) (same).

3

In fact, the Supreme Court accepted an amicus brief from a group of former federal judges in *Boumediene* itself. *See Boumediene v. Bush*, 553 U.S. 723, 731 n.† (2008) (listing amicus brief of former federal judges). Even the D.C. Circuit on various occasions has accepted amicus briefs from former federal judges, notwithstanding its earlier decision in *Boumediene*. *See, e.g.*, *In re Flynn*, 961 F.3d 1215, 1219 (D.C. Cir. 2020) (listing amicus brief of former federal district judges); *In re Leopold*, 964 F.3d 1121, 1123 (D.C. Cir. 2020) (listing amicus brief of former federal magistrate judges).

So it's not surprising that our circuit has accepted amicus briefs from retired federal judges—including the same three who seek to file as amici here. *See United States v. Gozes-Wagner*, 977 F.3d 323 (5th Cir. 2020).

**B.**

In *American College of Obstetricians & Gynecologists v. Thornburgh*, 699 F.2d 644 (3rd Cir. 1983), the Third Circuit, again by a 2-1 vote, denied leave to a group of law professors seeking to file a brief as amici. The majority held that the putative amici law professors "do not purport to represent any individual or organization with a *legally cognizable interest* in the subject matter at issue." *Id*. at 645 (emphasis added). The proposed amici sought only to express "their concern about the manner in which this court will interpret the law as the basis for their brief." *Id*. The majority denied leave for that reason. And that same logic would presumably bar the proposed amicus brief here as well—after all, none of the three judges who seek leave today claim a "legally cognizable interest" in Priscilla Lefebure's claims, but rather only a concern about the court's previous decision in this appeal.

But the filing of amicus briefs is governed by Federal Rule of Appellate Procedure 29. And nothing in that rule requires amici to have a "legally cognizable interest" in the matter. It only requires amici to state their "interest" in the case—along with "the reason why an amicus brief is

desirable and why the matters asserted are relevant to the disposition of the case." FED. R. APP. P. 29(a)(3).

So I'm inclined to agree with Judge Higginbotham, who concluded in his dissent that there is "no justification" for denying leave due to amici's lack of "legally cognizable interest" anywhere "in our rules, our precedent or our longstanding practices." 699 F.2d at 645. *See also id.* ("Candidly, I am baffled by the majority's decision."). As noted, our circuit often accepts briefs from a wide variety of amici—including those that neither allege nor possess a "legally cognizable interest" in the litigation. *See, e.g., Gozes-Wagner*, 977 F.3d 323. Notably, the Third Circuit itself has accepted amicus briefs from former federal judges, notwithstanding its earlier decision in *American College of Obstetricians. See, e.g., Reeves v. Fayette SCI*, 897 F.3d 154, 165 (3rd Cir. 2018) (McKee, J., concurring) (discussing amicus brief of retired federal judges).

## C.

Courts enjoy broad discretion to grant or deny leave to amici under Rule 29. *See, e.g., In re Halo Wireless, Inc.*, 684 F.3d 581, 596 (5th Cir. 2012) ("'Whether to permit a nonparty to submit a brief, as amicus curiae, is, with immaterial exceptions, a matter of judicial grace.'") (quoting *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000)).

But that does not mean the decision need not be a principled one. We should always "be on guard for the risk of judicial bias when it comes to discretionary practices" such as this. *Rollins v. Home Depot USA*, _ F.4th _, _ (5th Cir. 2021). As then-Judge Alito once noted, "[a] restrictive policy with respect to granting leave to file may . . . create at least the perception of viewpoint discrimination." *Neonatology Associates, P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 133 (3rd Cir. 2002). "Unless a court follows a policy of either granting or denying motions for leave to file in virtually all cases,

instances of seemingly disparate treatment are predictable." *Id. See also Boumediene*, 476 F.3d at 936 (Rogers, J., dissenting) (same).

Our circuit has never adopted either of the categorical rules urged by the majorities in *Boumediene* and *American College of Obstetricians*. To the contrary, as noted, we have allowed amicus briefs like the one proposed here. *See*, *e.g.*, *Gozes-Wagner*, 977 F.3d 323. I see no principled basis for suddenly adopting new categorical rules in this case—particularly when even the circuits where those rules originated no longer follow them.

## II.

The defendant alternatively asks us to deny leave to the putative amici based on the motivations of one of its originators. The defendant cites a news account that chronicles how the amicus effort originated with a former law clerk to one of the amici judges. The defendant points out that the law clerk "served time in the Louisiana State Penitentiary" and personally knows the assistant warden who is the co-defendant and alleged assailant in this case, and that this was a "motivating factor in seeking out potential *amici curiae*." The implication is that the amici's sharp criticisms are not sincere or well-founded in the law, but are instead driven by some personal vendetta.

I acknowledge the defendant's concerns about amici. And as discussed below and by the panel majority, there are indeed a number of flaws with their brief. But those flaws can and should be addressed by the court on the merits. There is no need to exclude the brief altogether. No benefit would be served by depriving the court of the opportunity to engage with critical analysis of its past work—to the contrary, that would contradict the whole point of our adversarial legal system, which relies on the robust exchange of competing views to ensure the discovery of truth and avoid error.

Our adversarial system of justice is based on the same fundamental premise as our First Amendment—a firm belief in the robust and fearless

exchange of ideas as the best mechanism for uncovering the truth.  As Justice Holmes observed, "the best test of truth is the power of the thought to get itself accepted in the competition of the market." *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting).  In an "uninhibited marketplace of ideas," "truth will ultimately prevail." *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 390 (1969).  Conversely, the best way to defeat bad ideas is not to suffocate them, but to air them out.  For our Founders were "confiden[t] in the power of free and fearless reasoning." *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring).  They believed in "expos[ing] . . . falsehood and fallacies, [and] avert[ing] . . . evil by the processes of education"—"more speech, not enforced silence." *Id.*  As Justice Brandeis liked to say, sunlight is the best disinfectant. Louis D. Brandeis, Other People's Money and How the Bankers Use It 92 (1914).

Likewise, "the fundamental assumption of our adversary system" is that "strong (but fair) advocacy on behalf of opposing views promotes sound decision making." *Neonatology Associates*, 293 F.3d at 131.  What John Stuart Mill once observed about "the liberty of thought and discussion" readily applies to the courtroom as well:  "If opponents of all-important truths do not exist, it is indispensable to imagine them and supply them with the strongest arguments which the most skillful devil's advocate can conjure up." John Stuart Mill, On Liberty 36 (1859) (1978 ed.).[1]

---

[1] This understanding of the adversarial system is not just reflected in how courts approach amici.  It also explains why the legal profession traditionally respects the right of attorneys to represent clients, regardless of one's personal views.  The same commitment to placing principle over personal interest that compels judges to faithfully follow our written Constitution, no matter what we may think of the outcome, is also what empowers attorneys to zealously represent accused criminals and other unpopular causes. *See, e.g.*, David Mccullough, John Adams 65–68 (2001) (noting that Adams became "more respected than ever" after defending British soldiers in the Boston Massacre,

So courts should welcome amicus briefs for one simple reason: "[I]t is for the honour of a court of justice to avoid error in their judgments." *The Protector v. Geering*, 145 Eng. Rep. 394 (K.B. 1686). As Judge Higginbotham wrote in his *American College of Obstetricians* dissent, "even in a court as learned as ours, we might be able to avoid some unnecessary catastrophes if we have the will and the patience to listen." 699 F.2d at 647. Then-Judge Alito put it this way: "[A]n amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend." *Neonatology Associates*, 293 F.3d at 131.

And of course, these principles apply even—indeed, especially—when amici sharply criticize the work of the court, as the proposed amici certainly do. To be sure, "no one *enjoys* being booed." *Wilson v. Houston Cmty. Coll. Sys.*, 966 F.3d 341, 345 (5th Cir. 2020) (Ho, J., dissenting from denial of rehearing en banc). But judges should "not just expect criticism, but embrace it." *Id.* After all, "as human beings, judges sometimes make mistakes, but strive to do better." *Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 384 (5th Cir. 2020) (Ho, J., concurring). So when we err, we should openly admit it, without shame or embarrassment. And we should be thankful, not offended, when criticism inevitably arrives. Thankful to live in a country, and under a

---

because "no man in a free country should be denied the right to counsel and a fair trial"); *see also* Robert Barnes, *Kagan defends former Bush official who is representing House in same-sex marriage case*, Wash. Post, Apr. 29, 2011, *available at* https://www.washingtonpost.com/politics/kagan-defends-former-bush-official-who-is-representing-house-in-same-sex-marriage-case/2011/04/29/AFoDR0GF_story.html.

Unfortunately, this tradition is not widely honored today—not consistently, anyway. Lawyers and firms defend this "hallowed, essential tradition of the profession"—but not if there are "repercussions from certain well-heeled corporate clients if they take positions disfavored" in certain circles. Eugene Scalia, *John Adams, Legal Representation, and the "Cancel Culture"*, 44 Harv. J.L. & Pub. Pol'y 333, 336, 338 (2021).

No. 19-30702
c/w No. 19-30989

Constitution, that "not only tolerates disagreement, but celebrates it." *Id.*
Thankful for our adversarial legal system premised on freedom of speech and
rigorous debate. Thankful for the opportunity to correct any mistakes that
may occur, because "it is more important to get the law right than to guard
our self-esteem." *Id.*

That doesn't mean, of course, that every amicus brief will turn out to
be useful. Here, the proposed amicus brief contradicts a number of views
that amici held when they served on the bench. The panel majority notes a
few examples. *See*, *e.g.*, *Lefebure v. D'Aquilla*, _ F.4th _, _ (5th Cir. 2021)
(explaining how the amicus brief conflicts with Bryan A. Garner et
al., The Law of Judicial Precedent 87, 121 (2016) (collecting
cases); *id.* at _ (explaining how the amicus brief conflicts with *Carter v.
Derwinski*, 987 F.2d 611, 613 n.1 (9th Cir. 1993) (Kozinski, J.) (en banc)).

And there are more. To note just one other example: Amici criticize
the court for deciding this case without oral argument. But that is a common
practice in the federal circuits, for example, when "the panel unanimously
agree[s] that the decisional process would not be meaningfully aided by oral
argument." *Sun Coast Resources, Inc. v. Conrad*, 956 F.3d 335, 340 (5th Cir.
2020) (citing Fed. R. App. P. 34(a)(2)). Amici should know this, having
decided countless appeals without oral argument—including appeals that
(unlike this one) present constitutional and regulatory issues of first
impression. *See*, *e.g.*, *United States v. Albers*, 136 F.3d 670, 673 (9th Cir. 1998)
(Kozinski, J.); *Lowry v. Barnhart*, 329 F.3d 1019, 1021–22 (9th Cir. 2003)
(Kozinski, J.). What's more, the Federal Rules of Appellate Procedure
specifically contemplate the denial of oral argument in cases such as this—as
amici again should know. *See* Fed. R. App. P. 31(c) ("An appellee who
fails to file a brief will not be heard at oral argument unless the court grants
permission.").

No. 19-30702
c/w No. 19-30989

But inconsistency or lack of rigor is not a good reason to deny leave to amici, any more than it is a good reason to deny freedom of speech. To the contrary, it would be "startling and dangerous" to adopt "a free-floating test for First Amendment coverage based on an ad hoc balancing of relative social costs and benefits." *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (plurality op.) (cleaned up). "Even where there is a wide scholarly consensus concerning a particular matter, the truth is served by allowing that consensus to be challenged without fear of reprisal. Today's accepted wisdom sometimes turns out to be mistaken." *Id.* at 752 (Alito, J., dissenting).

Besides which, "[i]f an amicus brief that turns out to be unhelpful is filed, the merits panel, after studying the case, will often be able to make that determination without much trouble and can then simply disregard the amicus brief." *Neonatology Associates*, 293 F.3d at 133. "On the other hand, if a good brief is rejected, the merits panel will be deprived of a resource that might have been of assistance." *Id.* So we would be "well advised to grant motions for leave to file amicus briefs unless it is obvious that the proposed briefs do not meet Rule 29's criteria as broadly interpreted." *Id.*

\* \* \*

The opposed motion for leave to file a brief as amici curiae is granted.


       /s/ James C. Ho
JAMES C. HO
*United States Circuit Judge*

10